# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SHERRY A. THOMAS, ) | |
| ) | CASE NO. 1:14-cv-01385 |
|     Plaintiff, ) | |
| ) | |
|     v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
|   Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
|     Defendant. ) | |

    Plaintiff Sherry A. Thomas ("Thomas") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

    For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I. Procedural History

    On January 14, 2011, Thomas filed an application for POD, DIB, and SSI, alleging a

disability onset date of December 31, 2008. (Tr. 11.) Her application was denied both initially and upon reconsideration. Thomas timely requested an administrative hearing.

On November 1, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Thomas, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 11.) On January 10, 2013, the ALJ found Thomas was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 21-22.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-eight (38) at the time of her administrative hearing, Thomas is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). (Tr. 21.) Thomas has a high school education and past relevant work as a dancer. (Tr. 21.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Thomas was insured on her alleged disability onset date, December 31, 2008 and remained insured through June 30, 2015. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, Thomas must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Thomas established medically determinable, severe impairments, due to depression, anxiety disorder, learning disorder, and asthma. (Tr. 13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14.) Thomas was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for the full range of

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

work at all extertional levels with some added non-exertional limitations. (Tr. 16, 21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Thomas was not disabled. (Tr. 21-22.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing*

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Listing 12.05*

In her first assignment of error, Thomas argues that the ALJ's finding at Step Three, that she did not meet Listing 12.05(C), was unsupported by substantial evidence. (ECF No. 17 at 8-

14.)

At Step Three of the sequential evaluation, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests squarely with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.05(C), 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> ***
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;

*Id.*[2]

Under each mental retardation listing, including Listing 12.05(C), a claimant must establish that her impairment: (1) satisfies the "diagnostic description in the introductory paragraph ***and*** any one of the four sets of criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, §

---

[2] In 2013, but not until after the ALJ's decision, the term "mental retardation" was replaced in the Code of Federal Regulations with the term "intellectual disability." *See Burbridge v. Comm'r of Soc. Sec.*, 572 Fed. App'x 412 (6th Cir. 2014). This Court will continue to use the previous terminology in effect at the time of the decision for the sake of consistency. Notably, the underlying requirements of the listings have not changed.

12.00(A) (emphasis added).  If a claimant does not show that her impairment satisfies the diagnostic description for mental retardation, then she cannot be found disabled.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012); *Green v. Astrue*, 2012 U.S. Dist. LEXIS 92685 at *8 (S.D. Ohio July 5, 2012).  "**Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22**." *Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012) (*citing Foster*, 279 F.3d at 354) (emphasis added).

The ALJ acknowledged that Thomas had test scores consistent with mental retardation, specifically noting IQ scores of 58, 60, and 66.  (Tr. 14.)  Though the ALJ does not indicate as much, her decision is consistent with a finding that Thomas suffered from an additional and significant work-related limitation or function, as the ALJ found that depression, anxiety disorder, and asthma were all severe impairments.[3]  (Tr. 13.)

---

[3]  Pursuant to 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c)6.  If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

An impairment that is "severe" necessarily constitutes a significant additional limitation.  *See, e.g., Breitenstein v. Astrue*, 2011 WL 1235018 (S.D. Ohio Jan. 6, 2011) *report and recommendation adopted sub nom. Breitenstein v. Comm'r of Soc. Sec.*, 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011) (finding that because the ALJ's decision itself acknowledges the existence of additional severe impairments – stuttering and depression/anxiety – these findings satisfy Listing 12.05(C)'s requirement of an "additional and significant work-related limitation of function.")

Nevertheless, the ALJ found that Listing for 12.05(C) was not met because the threshold diagnostic description in the listing was not demonstrated. *Id*.

### 1. Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning Manifested Before Age 22

Based on the above, to satisfy Listing 12.05(C), a claimant must demonstrate: (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and, (3) an additional and significant work-related limitation or function. *See, e.g., Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). In this case, the decisive issue centers on the first requirement.

The ALJ, in addressing whether Thomas had met her burden of demonstrating deficits in adaptive functioning prior to age 22, found as follows:

> [W]hile there is evidence of a learning disorder, the record as a whole does not support a diagnosis of mental retardation, as there is proof of adaptive functioning.
>
> * * *
>
> However, to establish a claim under listing 12.05, a claimant must show proof of deficits in adaptive functioning initially manifested during the developmental period (emphasis added). According to a Mental Residual Functional Capacity report submitted on November 21, 2011, State agency psychological consultant Leslie Rudy, Ph.D. noted that the claimant had sustained substantial gainful employment in the past as a cashier, secretary, food prep worker and factory worker. These jobs, Dr. Rudy stated, implied a degree of adaptive functioning that was inconsistent with mental retardation (Ex. 4A at 7-8). The earnings records on file confirm that the claimant engaged in steady substantial gainful activity between 1999 and 2008, only dipping below the minimum monthly countable earnings in 2001 and 2002 (Ex. 9D). Therefore, although the undersigned did find proof of a severe learning disorder, the claimant's adaptive functioning ruled out the presence of mental retardation, mild or otherwise.
>
> * * *

> In activities of daily living, the claimant has mild restriction. The claimant is able to perform basic chores with her boyfriend's help. She goes grocery shopping with her boyfriend and mother. Dr. Terry found the claimant mildly impaired in the area of daily living (Ex. 2A at 5-9).
>
> In social functioning, the claimant has moderate difficulties. The claimant lives with her boyfriend (Ex. 5F), whom she has been dating for three to four years. The claimant enjoys being with her children (Ex. 22F) Dr. Terry found the claimant moderately impaired in social functioning. The claimant experienced paranoia and obsession-type behavior in the past, along with conflicts with others, but retained the ability to interact with others on an occasional basis for very brief periods (Ex. 2A at 5-9).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant graduated from high school and was not placed in learning disabilities classes (Ex. 5F). The claimant has a driver's license but does not drive because her car broke down. She learned how to take public transit and use Dial-A-Ride. The claimant enjoys learning and went to school for medical assisting and medical coding (Ex. 22F). She further indicated that she would like to take a phlebotomy class or to attend college for holistic health (Ex. 18F). Dr. Litwin noted problems with memory and concentration (Ex. 5F). Dr. Terry found the claimant moderately impaired in concentration, persistence and pace. She found that the claimant would likely have difficulty with very detailed instructions. However, her thought content and processes were essentially within normal limits, according to records, with circumstantial thoughts happening on occasion (Ex 2A at 5-9).

(Tr. 14-15.)

Listing 12.05 does not define the phrase "adaptive functioning." Other courts have noted, however, that another portion of the Listings offers examples of "adaptive activities," which include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1); *see e.g., Wright v. Astrue*, 2013 U.S. Dist. LEXIS 26795 at **31-32 (S.D. Ohio Feb. 26, 2013). The Sixth Circuit has described deficits in adaptive functioning as follows:

9

> The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 28-29 (3d rev. ed. 1987) ("DSM-III")). To determine the definition of mental retardation under the SSA, it is appropriate to consult leading professional organizations' definitions. See 67 Fed. Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/ interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49.

*Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir. 2009); *accord Wright*, 2013 U.S. Dist. LEXIS 26795 at **31-32; *Greathouse v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 18904 (N.D. Ohio Feb. 14, 2014).

A number of recent decisions from within this Circuit have pointed out that "[n]owhere in the paragraph [discussing the diagnostic description] is it specified how severe such limitations must be to qualify." *Gethin v. Colvin*, 2014 WL 4104130 at *10 (W.D. Ky. Aug. 18, 2014); *Robinson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 93783 (S.D. Ohio July 10, 2014) ("The plain language of Listing 12.05 does not identify how severe limitations must be to qualify as 'deficits in adaptive functioning.'") The *Gethin* and *Robinson* decisions indicate that case law from the Sixth Circuit and other federal courts suggest that a claimant must have "relatively significant deficits" to satisfy the Listing. *Id*. It seems unlikely that an individual with relatively low IQ scores, whether falling in the range of mental retardation or borderline intellectual functioning, would have absolutely no deficits in adaptive functioning. As such, this Court agrees that *significant* deficits in adaptive functioning are required before the diagnostic criteria can be considered satisfied.

Thomas essentially argues that her school records, which show a low grade point average

10

and poor achievement on test scores, demonstrate the requisite deficits in adaptive functioning.[4] (ECF No. 17 at 10-11.) However, as noted above, functional academic skills is only one component of what the American Psychiatric Association defines as adaptive-skills limitations. Moreover, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes*, 357 Fed. App'x at 676-77; *see also Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 540 (6th Cir. 2014) ("neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two."); *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (holding that a claimant quitting school after the eighth grade with a history of special education classes was "insufficient to undermine the ALJ's conclusion" that she did not establish deficits in adaptive functioning prior to age twenty-two); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("The only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue her studies is unclear.") Herein, the ALJ expressly noted that Thomas "graduated from high school and was not placed in learning disabilities classes." (Tr. 15.)

Admittedly, the ALJ's discussion of the specific issue of deficits in adaptive functioning manifested prior to age 22 could have been more thorough. However, there is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers

---

[4] The Court does not construe Thomas's brief to argue that her low IQ scores themselves demonstrate deficits in adaptive functioning. (ECF No. 17 at 8-13.) To the extent such an argument can be inferred, it is rejected. *See, e.g., Golden v. Comm'r of Soc. Sec.*, 591 Fed. App'x 505, 506 (6th Cir. 2015) ("[claimant's] IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage.")

whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937 (N.D. Ohio Aug. 15, 2014); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012). A reviewing court may, however, "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937 at *22.

As noted *supra*, adaptive skills also refers to a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. The ALJ highlighted the finding of Leslie Rudy, Ph. D., that Thomas was able to obtain gainful employment in the past as a cashier, secretary, and food prep worker, and factory worker. (Tr. 14.) Thomas believes the ALJ's reliance on this is erroneous because she ultimately concluded that the earnings from these jobs did not result in substantial gainful activity ("SGA"). (ECF No. 17 at 11.) Thomas cites no authority suggesting that it is improper for an ALJ to consider a claimant's ability to engage in employment as evidence that the claimant does not have the required adaptive deficits of social functioning merely because the earnings did not rise to the level of SGA. Also, Thomas concedes in her brief that while the Listing 12.05 requires evidence of adaptive deficits *prior* to age 22, it is helpful to look at an individual's functioning even after the age of 22, including the individual's current functioning. (ECF No. 17 at 11.)

Thomas also asserts that she struggled with interpersonal matters, paranoia, and anxiety, and also stopped driving and relinquished care of her children to her mother. (ECF No. 17 at 12-13.) By doing so, presumably, Thomas is arguing that she had significant adaptive deficits in communication, self-care, home living, social/ interpersonal skills, use of community resources,

12

self-direction, functional academic skills, work, leisure, health, and safety. The ALJ, however, discussed many of these issues but plainly did not find that they demonstrated significant deficits in adaptive functioning. (Tr. 14-15.) Thomas is essentially asking this Court to reweigh the evidence, and to find significant deficits in adaptive functioning based on an interpretation of the evidence that differs from the ALJ. As noted by the Sixth Circuit in *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 Fed. App'x. 461, 463-464 (6th Cir. 2014), such an "argument enters the forbidden field of re-weighing the evidence. We must 'accept the agency's factual finding[]' when it is supported by substantial evidence, even when substantial evidence could justify a different result." 573 Fed. App'x at 463-464 (citations omitted).

Because the ALJ's decision fell within the zone of substantial evidence, Thomas's first assignment of error is without merit.

*Treating Physician*

In her second assignment of error, Thomas argues that the ALJ erred in her evaluation of the opinions of her treating psychiatrist, Praveen Abraham, D.O. (ECF No. 17 at 18.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*,

2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[5]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

---

[5] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

14

based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

According to Thomas, she received mental health treatment from Dr. Abraham at Pathways for "[a]while" but could not be more precise. (Tr. 53.) Notably, on April 26, 2011, Dr. Abraham completed a Mental Functional Capacity Assessment wherein he drew a line straight down the form indicating that Thomas was markedly limited in all three categories (and the within subcategories), including "understanding and memory," "social interaction," and "adaptation." (Tr. 708.) The form indicated that the aforementioned mental functional

15

limitations were expected to last twelve months or more. *Id*. Dr. Abraham indicated that Thomas suffered from depression, anxiety, and sleep problems. (Tr. 709.)

On March 30, 2012, *less* than twelve months later, Dr. Abraham completed a medical source statement concerning Thomas's ability to carry out mental work-related activities. (Tr. 609-610.) Dr. Abraham found that Thomas had no limitations in her ability to understand and remember simple instructions, to carry out simple instructions, or to make judgments on simple work-related decisions. (Tr. 609.) He further found that Thomas had only mild limitations in her ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. *Id*. In the area of interacting with others, Dr. Abraham again found only mild limitations in Thomas's ability to interact appropriately with co-workers, supervisors, and the public. (Tr. 610.) Thomas was also only mildly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id*. Dr. Abraham indicated that no other capabilities were affected by Thomas's impairments. *Id*.

In addressing these two starkly different opinions from the same treating psychiatrist, the ALJ found as follows:

> Finally, the undersigned considered the two medical source statements provided by Praveen Abraham, D.O, who provided most of the claimant's treatment at Pathways. On April 26, 2011, Dr. Abraham found the claimant markedly limited in virtually all areas (Ex. 19F). However, by March 29, 2012, he found her able to understand, remember and carry out simple instructions and make judgments on simple work-related decisions. He found the claimant only mildly impaired in her abilities to understand, remember and carry out complex instructions, make judgments on complex work-related decisions, interact with public, supervisors and coworkers, and respond to usual work situations and changes (Ex. 1OF). The undersigned gave Dr. Praveen's initial assessment no weight, as there is no other evidence on file for such marked restrictions. However, the March 2012 assessment was not only more consistent with the evidence as a whole, but strongly suggested that the claimant responded to treatment. As noted above,

16

> there is evidence that she became more motivated and willing to seek out employment over this period. For these reasons, Dr. Abraham's March 2012 assessment received great weight.
>
> In sum, the above residual functional capacity assessment is supported by the treatment records, State agency medical expert opinion, and Dr. Abraham's opinion.

(Tr. 21.)

Thomas argues that the ALJ erred because her brief analysis does not allow this Court to conduct a meaningful review. Furthermore, Thomas asserts that the ALJ's statement – that Dr. Abraham's latter opinion "strongly suggested that the claimant responded to treatment" – is tantamount to the ALJ substituting her lay opinion for that of the doctor. (ECF No. 17 at 16.) This Court disagrees. It is abundantly clear that the ALJ could not give great or controlling weight to both of these conflicting opinions. Theoretically, the ALJ could have credited the earlier 2011 opinion as an accurate portrayal of Thomas's limitations on the day the opinion was written, a snapshot of her limitations at that time. However, such a finding would not have helped Thomas as the disabling limitations must last at least twelve months. While Dr. Abraham believed the limitations he described on April 26, 2011 would last twelve months or more, he plainly changed his mind less than twelve months later, on March 30, 2012, by drastically reducing Thomas's limitations.[6] To discard Dr. Abraham's 2012 opinion in favor of the 2011 opinion, as Thomas suggests, would require the ALJ to substitute her own opinion for that of Dr. Abraham. This is precisely what an ALJ is not permitted to do.

---

[6] While Dr. Abraham's 2012 opinion did not expressly state that Thomas had positively responded to treatment, the significant improvement in her limitations was certainly the opinion of Dr. Abraham and not the ALJ. Therefore, under these circumstances, it was not unreasonable for the ALJ to infer that Thomas had responded to treatment.

17

Moreover, Thomas has not cited any law, ruling, or regulation suggesting that an ALJ violates the treating source rule when she decides between two inconsistent opinions offered by the same treating physician within a relatively short period of time. Where the treating doctor offers no explanation for the inconsistency, an ALJ cannot possibly credit both opinions. In fact, some courts have held that an ALJ may disregard all of a treating source's inconsistent opinions. *See, e.g., Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("we have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."); *Palomo v. Barnhart*, 154 Fed. App'x. 426, 429 (5th Cir. 2005) (finding the inconsistency in between treating physicians' initial assessments with later assessments provided "good cause for not giving their testimony greater weight."); *Tiffany v. Colvin*, 2014 U.S. Dist. LEXIS 67400 (W.D. Ky. Mar. 18, 2014) (noting that the opinion of a treating source need not be given deference where there is tension between two opinions from the same treating source); *cf. Parker v. Colvin*, No. 13-7258, 2015 WL 1401770, at *4 (C.D. Cal. Mar. 25, 2015) ("Nothing in the regulations suggests that, between two opinions from the same treating source, the factfinder must give weight to an unsupported opinion simply because it was prepared later in the treating relationship.")

In sum, Thomas's argument that the ALJ assigned "no weight" to Dr. Abraham's opinion is simply inaccurate. She ascribed great weight to Dr. Abraham's March 2012 opinion which implicitly overruled an earlier one. As such, her second assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by

substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

      IT IS SO ORDERED.

                                      <u>/s/ Greg White</u>
                                      U.S. Magistrate Judge

Date: May 27, 2015